UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                  Plaintiff,             Criminal No. 22-20003

v.

                                    Honorable Laurie J. Michelson

D-2 Jeremy Joshua,

                  Defendant.

Government's Response in Opposition to Defendant's Motion to Revoke
the Order of Detention (ECF No. 15)

## Introduction

After detailed consideration of the factors of 18 U.S.C. § 3142(g), the

Honorable David R. Grand detained Defendant Joshua. Joshua, a convicted felon

with a violent criminal history, used multiple, compartmentalized locations to

store, process, and distribute kilograms of drugs, including fentanyl. During their

investigation, agents seized almost 18 kilograms of drugs, almost a half a million

dollars and a rifle. The facts proffered by the government prompted the Court to

find no conditions could reasonably ensure the safety of the community or

Joshua's appearance if he were released. The Court's order should be continued.

## Procedural History

On December 20, 2021, DEA agents arrested Joshua while executing search

warrants at three locations associated with Joshua's drug trafficking. On December

21, 2021, Joshua was charged via a complaint with conspiracy to possess with intent to distribute controlled substances and being a felon in possession of a firearm. (ECF No. 1). On December 22, 2021, Judge Grand ordered Joshua be detained following a detention hearing. (ECF No. 10). On January 4, 2022, a grand jury returned an indictment against Joshua charging him with conspiracy to possess with intent to distribute and to distribute controlled substances, two counts of possession with intent to distribute controlled substances, and being a felon in possession of a firearm, all in violation of 21 U.S.C. §§ 841(a)(1), 846 and 18 U.S.C. § 922(g). (ECF No. 11). On January 27, 2022, Joshua filed the instant motion to revoke the detention order, which this Court should deny. (ECF No.15).

## Facts

Joshua conspired with his co-defendant Fredric Haynes to distribute kilograms of drugs, including fentanyl in the Eastern District of Michigan. Haynes traveled from California to Michigan frequently when drug shipments arrived. Joshua and Haynes used multiple properties to store and process the kilograms they distributed.

Joshua and Haynes's operation was sophisticated. They often delivered drug proceeds to individuals to launder back to Mexican sources of supply. But on two occasions Joshua unknowingly delivered the cash to an undercover officer. Joshua first delivered approximately $50,000 in March 2020 and then approximately $115,000 in April 2020.

DEA agents seized Joshua and Haynes's drugs on just two occasions, first in December 2020 after a traffic stop and most recently in December 2021 when they executed multiple search warrants.

On December 10, 2020, agents saw Joshua and Haynes drop off two cars to a car hauler in a mall parking lot. Surrounding each drop off they went to a condo in Sterling Heights, which was one of the locations agents searched in 2021 and determined Joshua and Haynes used to store drugs. When agents stopped the hauler and searched the cars, they found both were outfitted with traps; one hiding 990 grams of fentanyl and $140,020, the other hiding $158,970, totaling almost $300,000 in drug proceeds.

 

[1]

---

[1] With the exception of the firearm depicted below, the photographs in this memorandum are the same photographs included in Government's Exhibit 1 from

Recently, on December 20, 2021, agents executed search warrants after Haynes spent the weekend in Michigan. Agents searched the condo they saw Joshua and Haynes go to before delivering the two cars with drugs and money. When agents searched the condo, they found as many as 11 kilograms of suspected fentanyl stored in a duffle bag in a closet.



Agents also searched a residence in Detroit that Joshua owned and was renovating. Joshua and Haynes used this location to process drugs, breaking them down and adding dilutants before pressing and repacking the kilograms. Joshua and Haynes spent almost seven hours there the Friday night before agents executed the search warrants Monday morning. When they searched Joshua's house, agents seized another almost five kilograms of drugs. Agents found a kilogram press hidden in the floor with almost a full kilogram of fentanyl in the press.

the December 22, 2021, detention hearing.






And in a closet, Joshua, a convicted felon who was prohibited from possessing a firearm, stored an AR-15 rifle, likely to protect all the drugs he and Haynes were processing.



Agents also searched Joshua's Harper Woods apartment where they arrested him. Joshua had even more drugs there, including fentanyl and cocaine in the kitchen and in his car. Agents seized more than $47,000 stacked and rubber banded in a bedroom. And inside Joshua's car agents seized a garage door opener for the Sterling Heights condo he and Haynes used to store their kilograms.

The investigation into Joshua and Haynes's drug trafficking spanned more than a year. The two seizures were representative of their long-term drug trafficking. Agents intercepted Joshua and Haynes arranging drug sales even though they were not able to make a seizure each time. For example, on one occasion Joshua was intercepted meeting with a drug customer in Detroit while Haynes was in California. Following the meeting Joshua confirmed the amount of money he collected was supposed to be "54," as in $54,0000, likely the cost of a kilogram. There were multiple occasions when Joshua and Haynes discussed having larges amounts of money on hand, including Joshua's description of "tucking" cash until Haynes arrived in Michigan.

## Argument

Pretrial Services recommended Joshua be detained pending trial. Judge Grand concurred in his ruling. This Court should uphold that order.

The Court reviews a magistrate judge's order of detention de novo. *United States v. Montgomery*, No. 09-20101, 2010 WL 1052339 (E.D. Mich. Mar. 19, 2010) (Cox, J.); *United States v. Koubriti*, No. 01-80778, 2001 WL 1525270, at *5

(E.D. Mich. Oct. 16, 2001) (Rosen, J.) (noting that although the Sixth Circuit has not addressed the appropriate standard of review, district courts within the Sixth Circuit and sister circuits apply a standard of de novo review).

The government must show by a preponderance of the evidence that the defendant is a flight risk, and by clear and convincing evidence that he is a danger to the community. Joshua is both.

### Presumption of Detention

When a judicial officer finds probable cause that a defendant committed a listed crime under 18 U.S.C. §3142(e)(3) there is a presumption in favor of detention. A grand jury indictment is sufficient to establish probable cause under § 3142(e)(3) that a defendant has committed these types of offenses. *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985). Given the amount of drugs seized in this case, the decision regarding detention should start with the presumption that Joshua should be detained. The presumption "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained," even if a defendant satisfies his burden of production. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) quoting *United States v. Mercedes*, 254 F.3d 433 (2d Cir. 2001). This is so because "the presumption of dangerousness . . . represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." *Stone*, 608 F.3d at

7

946 quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986).

Joshua is the type of offender Congress presumed should be detained because he is less likely to be deterred despite pending charges or bond conditions. Even if this Court were to find that Joshua rebutted the presumption, the government has met its burden of persuasion as to both standards.

### 18 U.S.C. § 3142(g) Factors

The Court is to consider the following factors when determining if the government has met it burden of persuasion:

### Nature and Circumstances of the Offense: 18 U.S.C. § 3142(g)(1)

In weighing this factor, the Court is to consider whether the offense involves a controlled substance. Here, DEA seized nearly 18 kilograms of drugs on just two occasions, but that inevitably represented a fraction of Joshua's criminal activity.

Joshua was an integral part of a long term, large-scale, and sophisticated drug trafficking and money laundering conspiracy that dates back to at least March of 2020 when Joshua first delivered drug proceeds to be laundered.

Joshua controlled multiple, compartmentalized locations he and Haynes used to facilitate their illegal activity. They used the condo in Sterling Heights to store their kilograms. The condo was an otherwise unoccupied, discrete stash location in the suburbs. The utilities were established in a fake name in September 2020 by an individual who went to great lengths to try to disguise their identity. Joshua did not visit the condo regularly, but when he did it was for brief periods for an illegal

8

purpose.

Joshua not only used the house he was renovating in Detroit to process drugs, but agents also saw Joshua conduct suspected drug sales from the residence; quick meetings with people, including as recently as the weekend before agents executed search warrants.

Joshua and Haynes also used multiple phones simultaneously to compartmentalize their communications. And they switched phones often. Over the course of approximately 18 months DEA identified more than ten phones Joshua used, often in fake names, or his commonly used alias "Jason Miller." All of this was evidence of the sophistication of their operation.

### Weight of the Evidence: 18 U.S.C. § 3142(g)(2)

"Section 3142(g)(2) considers weight of the evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948. The Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run of the mill drug dealers, even without any indication that the defendant is engaged in violence…To be sure, drug trafficking is a serious offense that, in itself poses a danger to the community." *Id.* at 955. Joshua is not a run of the mill drug dealer. The type of drugs and quantity alone are indicative of the danger Joshua poses.

Fentanyl is inherently more dangerous than other drugs. According to the CDC it is 50 times more dangerous than heroin. See https://www.cdc.gov/stopoverdose/fentanyl/index.html. Fentanyl not only poses a

9

greater danger to users who can more easily overdose from the drug, but also to law enforcement who have to take extra precaution when seizing drugs that may contain fentanyl. See https://www.cdc.gov/niosh/topics/fentanyl/risk.html. When agents executed the search warrants at the three locations Joshua controlled, they used two drug detection dogs. Both dogs exhibited signs of exposure to fentanyl and had to be rushed to a veterinary office.

Despite being a convicted felon prohibited from possessing a firearm, Joshua stored an assault rifle in the same house he used to process drugs for distribution, which not only heightens the danger he poses to the community but is further evidence of his blatant disregard for the law.

Joshua's prior violent conviction is also evidence of his dangerousness. In 2014, Joshua was convicted of assault with intent to do great bodily harm, discharge of a firearm in a building, carrying a concealed weapon and felony firearm. Joshua callously shot another man twice in the legs over a mere $9 debt from a card game. Joshua entered the victim's home, found him in bed and demanded the money. Two people in the room offered to pay the victim's debt. Instead, Joshua shot him twice. Judge Grand was correct that "Joshua's prior criminal conduct shows him to be a serious danger to the community." (ECF No. 10, PageID.25).

**History and Characteristics of the Person: 18 U.S.C. § 3142(g)(3)**

Joshua's consistent criminal convictions, particularly his prior violent conviction, is not only evidence of the danger he poses to the community, but also of his recidivism. Joshua was convicted of malicious destruction of property in 2008, possession of marijuana in 2011, and attempt possession less than 25 grams of heroin in 2012. Joshua served three years in prison for his assault with intent to do great bodily harm and firearms offenses, a sentence Judge Grand described as "relatively light" (ECF No. 10, PageID.25). His prison sentence did not deter him. Joshua was discharged from parole in March 2019, and soon after he started trafficking drugs. Within a year of his release Joshua was delivering bulk drug proceeds to be laundered back to Mexico. Before one of Joshua's deliveries, Haynes told the undercover officer "this is what we do," indicating he and Joshua were established drug traffickers familiar with the money laundering process.

Joshua was not deterred even when his drugs were seized. Following the December 2020 seizure, Joshua was just more cautious. Joshua and Haynes were extremely surveillance conscious. They employed some of the more extensive counter-surveillance methods agents observed, consistently changing routes, traveling in different directions, and checking for law enforcement, making it hard to follow them. At one point in the Spring of 2021, agents believed they were compromised during surveillance, but that still did not stop Joshua. Agents also saw Joshua check his car for a tracking device and when they executed search

warrants agents found a radio frequency detector in Joshua's car, a device used to detect vehicle trackers.

Joshua told Pretrial Services that he has been unemployed for the past seven years and only supported himself doing "odd jobs." But that is because he inevitably made money distributing drugs. It is that illegal income that allowed Joshua to purchase the home in Detroit he used to process drugs for $5,000, pay monthly rent of $1,000, and more than $800 a month for his car, in addition to other expenses. Joshua also purchased a second car that he stored at his Detroit property that he bought with more than $10,000 in cash. Joshua's lack of legitimate employment and unexplained assets do not make him an appropriate candidate for bond.

### No Conditions of Bond Can Be Set to Address the Concerns of the Safety of the Community or Potential Risk of Flight

Short of detention the most restrictive bond conditions the Court could impose would include a GPS tether and home incarceration, but neither would ensure the safety of the community or Joshua's appearance. As Judge Grand aptly noted, "Joshua was aware for some time of the government's investigation…yet he continued…employing increasingly sophisticated counter-surveillance methods. This strongly suggests Joshua would not comply with bond conditions if released on bond and would instead attempt to find ways around them." *(Id.)*.

## Conclusion

For all of the above stated reasons Defendant's motion should be denied.

Respectfully Submitted,

Dawn N. Ison
United States Attorney

s/ *Andrea Hutting*
Andrea Hutting
Assistant United States Attorney
211 W. Fort St. Suite 2001
Detroit, MI 48226
313-226-9110 phone
andrea.hutting@usdoj.gov

Dated: February 8, 2022

CERTIFICATE OF SERVICE

I hereby certify that on Tuesday, February 08, 2022, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF system which

will send notification of such filing to the following:

Steve Scharg

<div style="margin-left: 50%;">

s/ *Andrea Hutting*

Andrea Hutting
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
313-226-9110 phone
andrea.hutting@usdoj.gov

</div>